**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| **Jesse Garcia,** | **Civil No. 08-4731 (ADM/JJG)** |
| **Plaintiff,** | |
| v. | **REPORT AND RECOMMENDATION** |
| **Warden Marty C. Anderson, Dr. T. Tran, Dr. S. Stanton, Jane Doe, and John Doe,** | |
| **Defendants.** | |

JEANNE J. GRAHAM, United States Magistrate Judge

Plaintiff Jesse Garcia ("Garcia") is an inmate at the Federal Medical Center ("FMC") in Rochester, Minnesota ("FMC-Rochester"). He is suing prison officials Marty C. Anderson ("Anderson"), Dr. T. Tran ("Dr. Tran"), Dr. S. Stanton ("Dr. Stanton"), Jane Doe, and John Doe pursuant to *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971), and for negligence under the Federal Tort Claims Act ("FTCA"). Garcia essentially claims that Defendants failed to properly evaluate him as a candidate for a liver transplant.

The case is presently before the Court on Defendants' Motion to Dismiss and for Summary Judgment (Doc. No. 12) and Garcia's Motion in Opposition to Summary Judgment (Doc. No. 33). For the reasons set forth below, the Court recommends that summary judgment be granted to all Defendants and the case be dismissed with prejudice.

**I.     BACKGROUND**

Garcia is serving an eighty-month sentence with a projected release date of March 22, 2011. Dr. Tran was Garcia's primary physician until his retirement in May 2008. Anderson was the warden at FMC-Rochester at the time of Garcia's transfer, but left that post in August 2007.

Dr. Stanton is the Clinical Director at FMC-Rochester and held that position during the time period under consideration.

The Bureau of Prisons ("BOP") does not harvest, distribute, or transplant organs at its facilities. Independent organizations and transplant centers perform those functions. To guide prison officials in determining whether to pursue transplantation as a treatment option for an inmate, the BOP implemented Program Statement 6031.01, section 39. Under that policy, a prison's clinical director determines whether it is medically necessary to evaluate an inmate's suitability for a transplant. If so, he or she will arrange for an evaluation by an organ transplant specialist to take place at the institution. If the specialist decides the inmate is a potential candidate, and the clinical director agrees, the inmate will be evaluated further at a transplant center. If the transplant center finds the inmate a suitable candidate, the clinical director will compile the necessary information and forward it to the BOP's medical director. If the medical director finds that a transplant is appropriate, the inmate will be approved for the transplant.

According to Dr. Stanton, when an inmate at FMC-Rochester requires treatment for end-stage liver disease, the BOP contracts for a Mayo Clinic specialist to evaluate the inmate's condition and treatment options. In this case, Garcia was transferred to FMC-Rochester on January 11, 2006, for evaluation of hepatitis C and decompensated cirrhosis. Garcia presently suffers from end-stage liver disease.

In February 2006, about a month after Garcia was transferred to FMC-Rochester, he was evaluated by Mayo Clinic gastroenterologist Dr. Patrick Kamath, who diagnosed Garcia with cirrhosis of the liver secondary to chronic hepatitis C. Dr. Kamath recommended that Garcia be treated with medication and monitored with ultrasound. Due to Garcia's decompensated cirrhosis, Dr. Kamath determined he was *not* a candidate for antiviral treatment. Dr. Kamath

also concluded Garcia was *not* a candidate for a liver transplant under Mayo Clinic guidelines. Dr. Kamath did not specify whether the guidelines prohibited transplantation because Garcia was a federal prison inmate, or for some medical reason.

The following month, in March 2006, Dr. Tran wrote in a progress note that Garcia "could be" a candidate for a liver transplant, but that the procedure was not offered by the Mayo Clinic to federal prison inmates. (Defs.' Mem. Supp. Mot. Dismiss Summ. J. Ex. 1 at 84.) Dr. Tran also wrote, "Consider him a candidate to be transferred to BOP facility where liver transplant could be considered." (*Id.* at 85.)

Although officials at FMC-Rochester took no further affirmative action to evaluate transplantation as a treatment option, Garcia's disease did not go untreated. In accordance with Dr. Kamath's and Dr. Tran's treatment suggestions, laboratory tests and ultrasounds were routinely performed, and Garcia was prescribed medicine to treat fluid build-up, control bleeding and clot formation, prevent spontaneous bacterial peritonitis, treat gastritis and reflux, and prevent ammonia build-up and encephalopathy. When Dr. Kamath reevaluated Garcia in August 2006, he noted that Garcia had "done well since the last evaluation" and that he and Garcia were both pleased with Garcia's progress. (*Id.* at 271.) Garcia's liver condition has remained stable and relatively unchanged since he arrived at FMC-Rochester.

Twice in 2007, Garcia requested transfers to other prisons in order to participate in residential drug abuse programs, but those transfers were denied by the BOP's Central Office. When Garcia also expressed frustration with the treatment of his liver disease at various times, he was advised that liver transplantation was a last resort, that he was doing well on his current course of treatment, and that he was not an acceptable candidate for transplant at the Mayo Clinic.

On May 22, 2007, Garcia filed a request for an administrative remedy, asserting that he had received no evaluation or treatment for his liver condition and asking that transplantation be considered. The request was denied by an associate warden at FMC-Rochester, acting in Anderson's absence, who reminded Garcia that he had seen a Mayo Clinic gastroenterologist twice and had been rejected as a candidate for transplantation at the Mayo Clinic. Garcia appealed the decision to the Regional Director for the North Central Regional Office, Michael K. Nalley, who denied the appeal on August 27, 2007.

On December 14, 2007, the National Inmate Appeals Administrator for the BOP, Harrell Watts ("Watts"), informed Garcia that he had reviewed Garcia's medical file and believed he was a potential transplant candidate. Watts explained to Garcia that the medical staff at FMC-Rochester would compile his information and send it to the BOP Transplant Advisory Group ("TAG"). Dr. Tran and Dr. Stanton completed the task of gathering and forwarding Garcia's medical files. TAG subsequently recommended that Garcia's request be reviewed by an approved transplant program, and it forwarded Garcia's information to the FMC in Devens, Massachusetts ("FMC-Devens"), for consideration by a transplant program operated by Tufts University ("Tufts").

In November 2008, Dr. Michael Nelson, the Regional Medical Director of the North Central Regional Office of the BOP, discussed Garcia's case with Dr. Lawton Shick, the chief of liver transplant services at Tufts. Dr. Shick considered Garcia a potential transplant candidate, but he recommended that a blood type be obtained from Garcia. If Garcia's blood type was O-positive, Dr. Shick said Garcia should be monitored rather than referred for a transplant because it was unlikely he would be transplanted before his release date. In addition, Garcia's Model for End-Stage Liver Disease ("MELD") score was only seventeen, and at that time, type O-positive

4

livers were being transplanted in patients with MELD scores in the mid-twenties and higher. Garcia's blood was typed and determined to be O-positive. Dr. Shick then opined that Garcia should remain at FMC-Rochester, but if his condition deteriorated, transplantation could be reconsidered.

Meanwhile, Garcia filed an administrative claim for damages under the FTCA on November 13, 2007. He alleged that the medical staff at FMC-Rochester had acted negligently by failing to follow Program Statement 6031.01 and not assisting Garcia in obtaining a liver transplant. He requested $1,000,000 in damages for deterioration of his health. Garcia's claim was denied because he did not show he had suffered an actual injury. Notification of the final denial of the claim was mailed to Garcia on January 4, 2008, and he was informed he had six months in which to commence a case in federal court. Instead of proceeding immediately to federal court, however, Garcia sought reconsideration of the claim. Garcia commenced this action in federal court on July 18, 2008.

## II. DISCUSSION

Defendants captioned their motion as one for dismissal *and* for summary judgment. The Court will treat the entire motion as one for summary judgment because Defendants submitted materials outside the pleadings; Garcia had adequate notice of and an opportunity to respond to the motion; and the Court has considered the extraneous materials submitted by Defendants and Garcia. *See* Fed. R. Civ. P. 12(d).

### A. Standard of Review

Summary judgment is proper if, viewing all reasonable inferences favorably to the nonmoving party, there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S.

317, 322-23 (1986). The moving party bears the burden of showing that the material facts in the case are undisputed. *Mems v. City of St. Paul*, 224 F.3d 735, 738 (8th Cir. 2000). The nonmoving party may not rest on allegations and denials, but must present specific facts creating a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). The Court views the evidence, and the inferences that may be reasonably drawn from it, in the light most favorable to the nonmoving party. *Graves v. Ark. Dep't of Fin. & Admin.*, 229 F.3d 721, 723 (8th Cir. 2000).

### B.     Garcia's FTCA Claim

An inmate must bring a tort claim under the FTCA "within six months after the date of mailing . . . of notice of final denial of the claim by the agency to which it was presented." 28 U.S.C. § 2401(b). Although Defendants originally challenged the timeliness of the FTCA claim, they conceded in their recently-filed reply that Garcia's request for reconsideration at the administrative level sufficiently tolled the statute. The Court, therefore, turns to the merits of the claim.

A claim under the FTCA can be brought only against the United States, not its employees. *See Knowles v. United States*, 91 F.3d 1147, 1150 (8th Cir. 1996). Here, the individual Defendants were acting within the scope of their employment during all relevant times. Accordingly, if the FTCA claim were to survive summary judgment, the United States should be substituted as the sole Defendant on Garcia's FTCA claim. *See Claude v. Smola*, 263 F.3d 858, 859 (8th Cir. 2001). If the District Court disposes of the claim as recommended, however, substitution would be futile.

The alleged violation of the FTCA is negligence: specifically, that Anderson, Dr. Tran, and Dr. Stanton acted negligently in evaluating Garcia's liver condition and failing to pursue a

6

liver transplant on his behalf. The Court will apply Minnesota law to Garcia's claim because Minnesota is where the negligence allegedly occurred. *See* 28 U.S.C. § 1346(b)(1). To prove negligence in Minnesota, a plaintiff must establish that (1) the defendant had a duty of care to the plaintiff; (2) the defendant breached the duty; (3) the plaintiff was injured; and (4) the breach proximately caused the injury. *Lubbers v. Anderson*, 539 N.W.2d 398, 401 (Minn. 1995).

Garcia's claim fails because he has not shown that the allegedly negligent care injured him. Soon after Garcia arrived at FMC-Rochester, Dr. Kamath evaluated his liver condition and determined that Garcia was not a suitable candidate for antiviral treatment or a liver transplant at the Mayo Clinic. He recommended a course of treatment including medication and monitoring, which Garcia's health care providers have followed. During his incarceration at FMC-Rochester, Garcia's condition has been successfully managed with laboratory tests, ultrasound, and medications. His condition has remained stable for several years.

In addition, under Minnesota law, a plaintiff who alleges a tort against a health care professional must serve two affidavits of expert review on the defendant at designated times, if one or more elements of the plaintiff's prima facie case will require expert testimony. *See* Minn. Stat. § 145.682, subds. 2, 3, 4; *Mathison v. United States*, 44 F. App'x 27, 29 (8th Cir. 2002). The plaintiff must serve an affidavit of expert review simultaneous with the summons and complaint, Minn. Stat. § 145.682, subd. 3, and a second affidavit identifying the experts to be called within 180 days of commencing suit, *id.*, subd. 4. The Minnesota legislature enacted these provisions "as a means of readily identifying meritless lawsuits at an early stage of the litigation," and "plaintiffs must adhere to strict compliance with the requirements" of the statute. *Broehm v. Mayo Clinic Rochester*, 690 N.W.2d 721, 725-26 (Minn. 2005) (citations omitted). A federal prison inmate alleging medical negligence under the FTCA must abide by § 145.682.

7

*Bellecourt v. United States*, 784 F. Supp. 623, 627, 636-37 (D. Minn. 1992); *see also Tineo v. Fed. Bureau of Prisons*, Civ. No. 05-724 (ADM/SRN), 2005 WL 1745451, at *2-3 (D. Minn. July 22, 2005).

There are two circumstances when a plaintiff's failure to comply with § 145.682 may be excused: (1) if expert testimony is not needed to establish negligence, or (2) if the plaintiff shows excusable neglect in failing to timely serve the affidavits. *See* Minn. Stat. § 145.682, subd. 2; *Bellecourt*, 784 F. Supp. at 636-37. Otherwise, the penalty for noncompliance is dismissal of the claim with prejudice. Minn. Stat. § 145.682, subd. 6; *Bellecourt*, 784 F. Supp. at 636.

Garcia filed this case more than 180 days ago. He has not served either affidavit, nor has he offered any reason for failing to do so or requested an extension of time. Certainly, expert testimony would be necessary to establish Garcia's claim that Anderson, Dr. Tran, and Dr. Stanton acted negligently in failing to evaluate him for a liver transplant. The applicable standard of care for potential transplant candidates, the acts purportedly breaching that standard, and the chain of causation allegedly resulting in an injury to Garcia are beyond the common knowledge of a layperson. *Cf. Bellecourt*, 784 F. Supp. at 637-38 (expert testimony required for failure-to-diagnose claim); *Sorenson v. St. Paul Ramsey Med. Ctr.*, 457 N.W.2d 188, 193 (Minn. 1990) (expert testimony required for claims of failure to diagnose and failure to properly treat condition). Accordingly, Garcia's FTCA claim cannot survive summary judgment.

### C. Garcia's Eighth Amendment Claim

Defendants rely on the doctrine of qualified immunity in seeking summary judgment on Garcia's Eighth Amendment claim. The Court must answer two questions to determine if a prison official is entitled to qualified immunity: "(1) whether . . . there was a deprivation of a

constitutional right; and, if so, (2) whether the right was clearly established at the time of the deprivation such that a reasonable official would understand his conduct was unlawful." *Vaughn v. Greene County*, 438 F.3d 845, 850 (8th Cir. 2006). As to the latter question, "[i]t is well established that the Eighth Amendment prohibition on cruel and unusual punishment extends to protect prisoners from deliberate indifference to serious medical needs." *Gregoire v. Class*, 236 F.3d 413, 417 (8th Cir. 2000) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). The existence of qualified immunity in this case will therefore depend on the first question.

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments." U.S. Const. amend VIII. In *Estelle v. Gamble*, the United States Supreme Court held that the Eighth Amendment establishes a governmental "obligation to provide medical care for those whom it is punishing by incarceration." 429 U.S. at 102-103. The government fails to meet that obligation by exhibiting "deliberate indifference to the serious medical needs of prisoners." *Id.* at 104. Under Eighth Circuit jurisprudence following *Estelle*, an inmate must prove (1) he had an objectively severe medical need, and (2) prison officials knew of, but deliberately disregarded, the need. *Jolly v. Knudsen*, 205 F.3d 1094, 1096 (8th Cir. 2000) (quotation omitted).

As to the first requirement, the question here is not whether Garcia's liver disease itself is a serious medical condition, but whether he had a severe medical need for a transplant. *See Bender v. Regier*, 385 F.3d 1133, 1137 (8th Cir. 2004). This factor is objective in nature. *Vaughn v. Gray*, 557 F.3d 904, 908 (8th Cir. 2009) (citation omitted). To prove the second requirement, Garcia "must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not rise to the level of a constitutional violation." *Estate of Rosenberg v. Crandell*, 56 F.3d 35, 37 (8th Cir. 1995) (quoted in *Jolly*,

9

205 F.3d at 1096). This factor depends on a defendant's subjective knowledge. *Vaughn*, 557 F.3d at 908 (citation omitted).

With this framework in mind, Anderson, Dr. Tran, and Dr. Stanton are entitled to qualified immunity on Garcia's Eighth Amendment claim, because he has not met the first prong; namely, he has not shown an objectively severe medical need for a liver transplant. The medical record demonstrates that Garcia's treatment regimen has proven adequate for his condition and that his condition has remained stable during his confinement at FMC-Rochester. Although some of the doctors describe Garcia as a potential transplant candidate, the reality is that the transplant programs at both the Mayo Clinic and Tufts deemed him unsuitable as a candidate, and no other transplant facility has indicated unequivocally that he would qualify as a candidate.

While the discussion could end there, for completeness, the Court turns to the subjective requirement. Garcia has not established that Anderson, Dr. Tran, or Dr. Stanton actually knew of, but deliberately disregarded, the serious medical need for a transplant. As the warden of FMC-Rochester, Anderson was not personally involved in treating Garcia or implementing Program Statement 6031.01. Anderson's only connection to Garcia's Eighth Amendment claim is his position at the prison, but the theory of respondeat superior does not apply in *Bivens* actions. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1948 (2009) (citations omitted).

As Garcia's medical provider, Dr. Tran knew of his condition, but he monitored and treated it appropriately and within the parameters of his authority. Although Dr. Tran wrote in at least one progress note that Garcia should be transferred to a BOP facility where transplantation was a genuine option, Dr. Tran had no authority to arrange for a liver transplant or even schedule a second evaluation. This was the responsibility of Dr. Stanton as the Clinical Director.

Under Program Statement 6031.01, Dr. Stanton was required to initiate an organ transplant evaluation by a specialist and arrange for a second evaluation at a transplant center, if she agreed with the specialist's decision that Garcia was a potential candidate for transplantation. Here, Dr. Stanton initiated an evaluation by Dr. Kamath, who determined that Garcia was not a potential candidate for transplantation under Mayo Clinic guidelines. Given this determination, Dr. Stanton was not required to act further under the Program Statement, and therefore, she did not show deliberate disregard for Garcia's medical condition. While further review prompted a second opinion at Tufts, the results were the same and he did not qualify. As to the delay between the two evaluations, the records show that the delay did not exacerbate Garcia's condition, and the absence of such medical evidence means that no Eighth Amendment violation occurred. *See Crowley v. Hedgepeth*, 109 F.3d 500, 502 (8th Cir. 1997) (quotation omitted).

In sum, the Court recommends that Anderson, Dr. Tran, and Dr. Stanton be granted qualified immunity on Garcia's Eighth Amendment claim, because he has not shown either the existence of an objectively severe medical need or deliberate disregard by these officials.

### D.  The Doe Defendants

There is one final matter to discuss: Garcia's claims against the unidentified Defendants Jane Doe and John Doe. "[A]n action may proceed against a party whose name is unknown if the complaint makes allegations specific enough to permit the identity of the party to be ascertained after reasonable discovery." *Estate of Rosenberg*, 56 F.3d at 37; *see Munz v. Parr*, 758 F.2d 1254, 1257 (8th Cir. 1985) (stating dismissal is appropriate when an unnamed defendant's identity cannot be ascertained through discovery). Garcia did not plead any specific involvement by these Defendants in his Complaint, nor did not explain their involvement in

response to Defendants' motion for summary judgment. Garcia did not ask for additional time to discover their identities. Therefore, Garcia's claims against Jane Doe and John Doe should be dismissed without prejudice. *See Phelps v. U.S. Fed. Gov't*, 15 F.3d 735, 739 (8th Cir. 1994) (approving dismissal without prejudice of unknown defendants).

Accordingly, based on all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. Defendants' Motion to Dismiss and for Summary Judgment (Doc. No. 12) be **GRANTED**;

2. Garcia's claims against Defendants Warden Marty C. Anderson, Dr. T. Tran, and Dr. S. Stanton be **DISMISSED WITH PREJUDICE**;

3. Garcia's claims against Defendants Jane Doe and John Doe be **DISMISSED WITHOUT PREJUDICE**; and

4. Garcia's Motion in Opposition to Summary Judgment (Doc. No. 33) be **DENIED**.

Dated: August 13, 2009        s/ *Jeanne J. Graham*
                              JEANNE J. GRAHAM
                              United States Magistrate Judge

### NOTICE

Pursuant to District of Minnesota Local Rule 72.2(b), any party may object to this Report and Recommendation by filing and serving specific, written objections by **August 27, 2009**. A party may respond to the objections within ten days after service thereof. Any objections or responses shall not exceed 3,500 words. The district judge will make a de novo determination of those portions of the Report and Recommendation to which objection is made. The party making the objections must timely order and file the transcript of the hearing unless the parties stipulate that the district judge is not required to review a transcript or if the district judge directs otherwise.